IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Paul Korzec,     CASE NO. 3:21-CV-00453

    Plaintiff,     Judge James G. Carr

  v.

GEM, Inc. *et al.*,     **ORDER**

    Defendants.

This is a "hybrid" action brought under Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Plaintiff Paul Korzec brings claims against Local 50 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 50") and GEM, Inc. Plaintiff asserts that GEM wrongfully denied him wages and benefits and that Local 50 breached its duty of fair representation ("DFR") by failing to file a timely discharge grievance on his behalf.

Pending is Defendant Local 50's motion for summary judgment (Doc. 20) and GEM's motion for summary judgment (Doc. 21). For the reasons described below, I grant Defendants' motions for summary judgment.

**Background**

Local 50 negotiates collective-bargaining agreements on behalf of its members. In 2020, plaintiff began working with defendant GEM, Inc. ("GEM"), a company within the jurisdiction of Local 50. (Doc 3, PgID 17). GEM, a contractor in Walbridge, Ohio primarily performs commercial service, maintenance, and repair work on heating, ventilation, and air conditioning systems. (Doc 3, PgID 16).

On August 28, 2020, GEM terminated plaintiff for making racial epithets in violation of GEM's anti-discrimination policy. (Doc 3, PgID 17; Doc. 20, PgID 85-86). Plaintiff does not deny making these statements. (Doc. 20, PgID 85-86).

On August 31, 2020, Richard Salisbury, Local 50's Business manager, learned about plaintiff's termination from GEM when plaintiff visited the union hall to designate that he was available for job assignments. (Doc 20, PgID 86). Defendants state that plaintiff did not file a grievance at this time or discuss why he had been terminated with Salisbury. *Id*. Plaintiff states that he visited the union hall to ask if his termination notice had yet been received. (Doc 3, PgID 18).

Shortly after, on September 8, 2020, plaintiff returned to the union hall indicating that he wished to "tell his side of the story" regarding his termination and left a written statement. (Doc 3, PgID 18; Doc 20, PgID 86). Again, defendants assert that plaintiff did not tell anyone that he wished to file a grievance. (Doc 20, PgID 86). Rather, defendants state that plaintiff wished to be paid for his vacation and on-call time from his prior position.

Mr. Salisbury told plaintiff that Local 50 members work under the National Service & Maintenance Agreement ("NSMA") to which GEM is a signatory. (Doc 20, PgID 87). Thus, plaintiff was aware that because NSMA does not pay out vacation and on-call time, GEM would not either. *Id*.

On September 14, 2020, plaintiff again returned to the union hall to get an update on the status of his vacation and overtime pay and was reminded that he would not be paid for this. *Id*. Plaintiff claims that during this period he repeatedly asked Mr. Salisbury whether Local 50 had received his termination notice and he was told it had not.

On or around October 12, 2020, plaintiff returned to the union hall and stated he wished to file a grievance. (Doc 3, PgID 18; Doc 20, PgID 87). The union processed the grievance under NSMA non-discrimination policy because plaintiff's job was governed by that agreement. *Id*.

After the parties were unable to resolve the grievance, an NSMA representative, under the NSMA procedures, took over the grievance. Plaintiff never contended that Local 50 should not process the grievance as provided under the NSMA. (Doc 20, PgID 88). After the grievance process was advanced to NSMA, GEM made an initial offer of 80 hours of pay to settle the matter with plaintiff. *Id.* However, plaintiff did not accept this offer.

Finally, the NSMA representative ultimately withdrew that grievance for being untimely after plaintiff and GEM could not reach a settlement agreement. *Id*. Plaintiff asserts that Local 50 should have told him that the NSMA required filing the grievance within ten (10) days of his termination. This mattered, according to plaintiff, because Local 50's collective bargaining agreement with GEM allowed fourteen (14) days for filing the grievance. Defendants contend that the difference in the limitations periods does not matter because plaintiff never sought or filed a termination grievance *vis-a-vi*.

**Standard of Review**

To obtain summary judgment under Federal Rule of Civil Procedure 56, a defendant must show: 1) there is no genuine dispute of material facts, and 2) he is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a motion for summary judgment, a plaintiff must show that material facts are in dispute. *See generally Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

**Discussion**

Claims brought pursuant to Section 301 of the LMRA are known as "hybrid" claims because an employee "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Swanigan v. FCA US LLC*, 938 F.3d 779, 784 (6th Cir. 2019). Thus, plaintiff's hybrid § 301 claim cannot survive unless the allegations in his complaint support a finding that Local 50 breached its DFR and GEM breached its collective bargaining agreement. A deficiency in either is fatal to plaintiff's hybrid claim.

### 1. The Union did not breach is Duty of Fair Representation

As an initial matter, "a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991). For plaintiff to prevail in his breach of his DFR claim, he must show that Local 50's failure to tell him about the grievance deadline was "arbitrary, discriminatory, or in bad faith." *DeShetler v. FCA US, LLC*, 790 F. App'x 664, 669 (6th Cir. 2019).

Plaintiff claims that Local 50 had a duty to inform him of the date by which he had to file a grievance for his allegedly wrongful termination. However, plaintiff does not state how this constitutes a breach of Local 50's DFR. Notably, because plaintiff does not state that Local 50 intentionally or dishonestly failed to inform him of the grievance deadline, plaintiff implies that Local 50 acted arbitrarily. A union acts arbitrarily by acting "so far outside a wide range of reasonableness as to be irrational." *O'Neill*, 499 U.S. at 67.

First, mere negligence on the part of a union will not satisfy this requirement. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 376 (1990); *Walk v. P*I*E* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992) (holding that the union's decision not to investigate a

potentially winning argument was negligent, but not arbitrary in and of itself); *see, e.g., Garrison v. Cassens Transport Co.*, 334 F.3d 528, 540-42 (6th Cir. 2003) (holding that negligent conduct by the union is not enough to constitute a breach of the duty of fair representation).

Further, ordinary mistakes, errors, or flaws in judgment are also insufficient. *See Walk v. P*I*E* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992). Therefore, to prevail on an arbitrary DFR claim, a plaintiff must show that the union's actions were "wholly irrational." *O'Neill*, 499 U.S. at 78.

Here, Local 50's failure to inform plaintiff of the grievance deadline does not even amount to negligence. Though plaintiff was in communication with the Union on various dates in August and September 2020, his communication was regarding his desire for new employment and to acquire his benefits pay. Plaintiff never stated his desire to file a termination related grievance. Therefore, Local 50 was not put on notice that plaintiff intended to file such a grievance in the first place.

Indeed, plaintiff waited until October 12, 2020, before asking Local 50 to file a grievance. (Doc 3, PgID 18; Doc 20, PgID 87). This was 45 days after plaintiff was terminated on August 28, 2020, far beyond NSMA's ten (10) day grievance deadline and even Local 50's inapplicable fourteen (14) day deadline.

Moreover, the Sixth Circuit holds that "the duty to initiate a grievance remains with the plaintiff." *E.g., Long v. Gen. Motors Corp.*, 19 Fed. Appx. 200, 203 (6th Cir. 2001). Accordingly, defendant Local 50's properly relies on *Price-Woodson*. In *Price-Woodson*, the court granted the union's motion for summary judgment finding that the burden was on the plaintiff to file her grievance within seven days of the event giving rise to it. *Price-Woodson v. UAW Local 862*, No. 3:13-cv-618-DJH, 2015 U.S. Dist. LEXIS 112999 (W.D. Ky. Aug. 26, 2015). Thus, the court

found that the union in *Price-Woodson* did not act arbitrarily by not warning the plaintiff to file her grievance before the deadline passed. The same is true here.

Defendant Local 50 also relies on the decision in *Hinkle*. In that case, the plaintiff was placed on leave and informed the union that he wished to be reinstated. However, the plaintiff never formally asked to file a grievance before the deadline passed. *Hinkle v. Chrysler Corp.*, No. 86-2225, 1986 U.S. Dist. LEXIS 17886, at *5 (E.D. Mich. Nov. 10, 1986). The court held that the union's failure to file a timely grievance on the plaintiff's behalf did not amount to a violation of its DFR because the union was not put on notice that the plaintiff wished to file a grievance. *Id*.

Thus, I find that Local 50 did not have a duty to inform plaintiff of the grievance deadline or assume he wanted to file a grievance. Accordingly, Local 50 did not breach its DFR and plaintiff failed to meet his burden of showing that he is entitled to judgment as a matter of law.

## 2. Breach of the Collective Bargaining Agreement

To have standing to bring claims against GEM for breaching the collective bargaining agreement, Plaintiff must have met his initial burden of showing that Local 50 violated his DFR.

As I established above, plaintiff has not met this burden. Therefore, plaintiff lacks individual standing to bring claims against GEM regarding his benefits pay. Accordingly, this issue is ultimately irrelevant because I found that the union did not breach its DFR, and plaintiff must meet both to survive a section 301 claim.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED THAT:

Defendant Local 50's motion for summary judgment (Doc. 20) and defendant GEM's motion for summary judgment (Doc. 21) be, and the same hereby are granted.

So ordered.

s/James G. Carr
Sr. U.S. District Judge
